**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHARLES W. LEWIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.   06 C 6639** |
| **v.** | ) | |
| | ) | **Magistrate Judge Morton Denlow** |
| **MICHAEL ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are cross-motions for summary judgment in this Social Security case. Claimant Charles Lewis ("Claimant"), challenges the decision of Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"), claiming that Commissioner's denial of Claimant's request for Supplemental Security Income Benefits ("SSI") should be reversed or remanded because the Administrative Law Judge ("ALJ"): (1) failed to properly determine the onset of Claimant's disability; (2) did not perform an adequate residual functional capacity assessment ("RFC"); and (3) failed to comply with the district court and Appeals Council remand orders. For the reasons set forth below, the Court grants Claimant's motion for summary judgment, denies Defendant's motion for summary judgment and remands for further proceedings consistent with this opinion.

# I. BACKGROUND FACTS

## A.    Procedural History

Claimant applied for SSI Benefits on January 23, 2001, claiming onset of his disability on December 31, 1990. R. 49. Claimant's application was denied on April 24, 2001 and her request for reconsideration was denied on August 8, 2001. R. 25, 31. He appealed the decision to an Administrative Law Judge, Edward Pappert, who denied his disability benefits on July 22, 2002. R. 22, 35, 205-29. The Appeals Council denied Claimant's request for review on October 29, 2002. R. 10, 13.

Following an appeal to the district court, Claimant and the Commissioner jointly moved for an order to remand Claimant's case for further proceedings. R. 246-49. On January 17, 2006, Magistrate Judge Sidney I. Schenkier granted this Joint Motion for Remand. R. 244-45. Judge Schenkier remanded the case to the Commissioner with the following orders: (1) re-evaluate Claimant's peripheral neuropathy[1] and bilateral carpal tunnel syndrome,[2] singularly and in combination with Claimant's other impairments; (2) fully evaluate Claimant's obesity and its impact on Claimant's other impairments and his ability to work; (3) re-evaluate Claimant's credibility and RFC; and (4) obtain supplemental Vocational Expert ("VE") testimony and give Claimant an opportunity to testify. R. 244.

---

[1] "A diabetes mellitus-related disorder of the peripheral nervous system, autonomic nervous system, and some cranial nerves" that "causes a dulling of the sensations of pain, temperature, and pressure, especially in the lower legs and feet." Stedman's Medical Dictionary 272690 (27th ed., 2006).

[2] "Compression of the median nerve" at "the passageway deep to the transverse carpal ligament between tubercles of the scaphoid and trapezoid bones on the radial side and the pisiform and hook of the hamate on the ulnar side, through which the median nerve and the flexor tendons of the fingers and thumb pass." Id. at 422250.

The Appeals Council then remanded the case to the ALJ for further proceedings consistent with Judge Schenkier's order. R. 288-90.

On July 5, 2006, ALJ Pappert held a second hearing, at which Claimant, represented by counsel, and a VE testified. R. 384-419. On September 25, 2006, the ALJ issued a partially favorable decision awarding Claimant benefits for his disability from March 9, 2005, but not prior thereto. R. 230-42.

Claimant now seeks judicial review of the unfavorable portion of the ALJ's decision pursuant to 20 C.F.R. § 404.984. The parties have consented to this Court's jurisdiction to decide this case. The Court conducted an oral argument on September 24, 2007.

## B.    Hearing Testimony - July 5, 2006

### 1.    Charles W. Lewis - Claimant

Claimant was fifty-four years old at the time of the hearing. R. 392. He is single and has never married. R. 390. Claimant is a high school graduate, and has completed some college and continuing education courses. R. 391. He last worked in 2002 as a part-time custodial supervisor at the People's Music School. R. 390-91. During the course of his employment, Claimant worked two hours a day for six days a week. *Id.*

Claimant is five feet ten and one-half inches tall and weighs approximately 296 pounds. R. 401-02. He suffers from a combination of impairments consisting of: non-insulin dependent diabetes mellitus (NIDDM)[3] with early diabetic neuropathy; dyslipidemia[4]; sleep

---

[3]"[A]n often mild form of diabetes mellitus of gradual onset, usually in obese individuals over age 35; absolute plasma insulin levels are normal to high, but relatively low in relation to plasma glucose levels; ketacidosis is rare, but hyperosmolar coma can occur; responds well to dietary regulation and/or oral hypoglycemic agents, but

disorder; bilateral foot pain, most likely secondary to diabetic neuropathy; bilateral knee arthralgias[5], most likely secondary to osteoarthritis; hypertension; low back pain; musculoskeletal pain; bilateral carpal tunnel syndrome; and obesity.  R. 238.  Claimant was diagnosed with diabetes sometime in the early 1980's or 1990's.  R. 396.  Due to his diabetes, he experiences symptoms of frequent urination, neuropathy, and an occasional loss of sensitivity of his hands and feet.  *Id.*

Claimant testified that the pain in his hands, feet, and the "pain going down the side" of his head bother him the most.  R. 395.  He feels pain in both feet, and one of his feet has bone spurs which causes Claimant additional sharp pain.  R. 397. Furthermore, hallus valgus[6], flat feet, and other feet problems cause his shoes to wear out in a "very severe angle" about every three months.  R. 403-04.  His feet problems limit his ability to walk; he can only walk two to three blocks before needing rest.  R. 404.  Claimant can stand for about thirty minutes, but he must shift his weight back and forth, because his feet get sore.  R. 405.  He experiences numbness in his feet daily that comes and goes irregularly.  R. 408.

If Claimant writes or holds an object "too long," his hands will cramp up.  R. 406.  If he uses both hands, he can lift ten pounds for a short amount of time.  R. 407-08.  When Claimant holds something for a long time, his fingers become numb and he drops the object.

---

diabetic complications and degenerative changes can develop."  Stedman's at 110330.

[4]"An abnormality in the quantity of lipids (fats) in the circulating blood."  Attorney's Dictionary of Medicine at 5581 (39th ed., 2005).

[5]"Pain in a joint."  Stedman's at 33020.

[6]"A condition in which the great toe is bent toward, or over, the neighboring toes."  Attorney's Dictionary at 291.

*Id.* Because of his back and feet problems, claimant rides a bicycle, but the bicycle causes his hands to swell. R. 404.

In addition, Claimant has limited mobility. R. 399-400, 403, 407, 409. Claimant finds it difficult to bend over because of the pain and weakness in his knees, his weight, and poor balance. R. 399-400, 403, 407. He can only sit for about an hour before he experiences lower back pain. R. 407. Furthermore, Claimant experiences shortness of breath, affecting his ability to walk up a flight of stairs. R. 409.

### 2. William Newman - Vocational Expert

William M. Newman, a VE, testified about the existing jobs in the economy that might be suitable for Claimant. R. 410-18. Claimant lacked any past relevant work, so the VE did not analyze Claimant's past relevant work. R. 411.

The ALJ posed a hypothetical to the VE regarding the available jobs to an individual with the following limitations: Claimant's age range, education, and work experience; capacity of lifting twenty pounds occasionally and ten pounds frequently; inability to perform postural movements such as stooping, crouching, crawling, and kneeling more than occasionally; inability to use ladders and scaffolding for work tasks; and inability to use stairs more than occasionally. R. 411. The available jobs in the national economy for such a person included about 30,000 hand packer positions, 13,000 machine tender positions, and 7,500 counter clerk positions in Chicago and its surrounding counties. R. 412. The VE characterized these available positions as "light level" positions. R. 416.

The ALJ then modified the above hypothetical by adding this additional limitation:

the inability to use the hands for continuous grasping and fine manipulation. R. 412. This additional limitation did not affect the available jobs of the previous hypothetical. R. 414. If the additional limitation was instead the inability to use the hands for frequent grasping and fine manipulation, the hand packer and machine tender jobs would be eliminated. *Id.* That individual would be able to perform about 22,000 light delivery positions and 30,000 gate guard positions. *Id.*

The ALJ further modified the hypothetical by adding the limitation as a result of neuropathy in the feet, such that the use of foot controls would be problematic from time to time. R. 415. This new hypothetical would impact the light delivery positions but not the gate guard or counter clerk positions. *Id.* If a limitation was also added of an inability to stand and walk more than two hours total in an eight-hour day, not more than fifteen to twenty minutes at a time, and limited to "no use" of scaffolding or ladders, with only occasional stair use, the individual would be limited to work at the sedentary level. *Id.* Jobs available under the most recent hypothetical included about 28,500 cashier positions, 8,000 sorter positions, and 14,600 assembler positions. R. 416.

Claimant's attorney questioned the VE about his conclusions. R. 416. The VE clarified that the hand packer, machine tender, and counter clerk positions are at the light level, and the assembler and the sorter positions are at the sedentary level. R. 416-17. Claimant's attorney also asked whether adding a limitation to the last hypothetical of an ability to stand for only thirty minutes instead of the ability to stand for fifteen to twenty minutes at a time would still limit a claimant to sedentary work. R. 417-18. The VE thought that such a limitation would still limit a claimant to sedentary work. *Id.*

## C.    Medical Evidence

### 1.    Cook County Hospital

The record includes many diagnostic tests or procedures performed at the Cook County Hospital. R. 102-05. On October 10, 1997, Claimant underwent open right carpal tunnel release. R. 106. On October 31, 1997, the outpatient progress notes mentioned that Claimant's "symptoms improved" and that he was "doing well." R. 121. Claimant's emergency room records at the hospital from December 6, 2000 indicated carpal tunnel, hand pain, and hand numbness. R. 117-18. On January 17, 2001, Claimant's outpatient progress note reported no complaints except some burning and tingling sensation in the toes of his left foot, as well as a palpable firm mass in his right foot. R. 119-20.

### 2.    Dr. Maximo C. Bermudez - Claimant's Treating Physician

Dr. Bermudez treated Claimant multiple times at the Chicagoland Medical Association. On December 20, 2000, Dr. Bermudez noted that Claimant had numbness and

tingling in his fingers.  R. 140.  The doctor observed Claimant's difficulty approximating[7] his right thumb and right little finger.  *Id.*  Dr. Bermudez indicated that Claimant needed an electromyogram[8] ("EMG") nerve conduction testing to determine the extent of nerve damage due to diabetes and hypertension.  *Id.*  He also expressed a need for Claimant to obtain a thorough eye exam because of this blurred vision.  *Id.*

On March 2, 2001, Dr. Bermudez diagnosed Claimant with peripheral neuropathy and diabetes, and noted that his hypertension was moderately controlled.  R. 139.  Dr. Bermudez directed Claimant to use Vitamin B6 for peripheral neuropathy.  *Id.*  On November 3, 2002, Claimant received a routine physical exam with normal results.  R. 142.  The exam form noted that Claimant's hypertension and diabetes were controlled with prescribed medications. *Id.*

### 3.    Heartland Health Outreach

Claimant received treatment on March 9, 2005, and in May 2006 from Heartland Health Outreach.  R. 372-78.  His diagnoses included obesity, lower back pain, diabetes mellitus, hypertension, neuropathy, hyperlipidemia[9], and a sleep disorder.  R. 373-74.

---

[7] "To bring close together."  Stedman's at 30200.

[8] "A graphic representation of the electric currents associated with muscular action."  *Id.* at 126730.

[9] "The presence of high levels or concentrations of lipids (fats) in the blood. It includes hyperlipoproteinemia and hypercholesterolemia."  Attorneys' Dictionary at 5176.

### 4.     Dr. Mo - Claimant's Treating Physician

Dr. James Mo treated Claimant at the Harmony Medical and Wellness Center from March 23, 2001 to February 18, 2006, for diabetes and hypertension.  R. 325-69.  The medical records were mostly illegible, and the doctor declined to transcribe them.  R. 325.

On July 1, 2006, Dr. Mo completed a physical capacity assessment for Claimant.  R. 379-83.  In the questionnaire, Dr. Mo diagnosed Claimant with diabetes, hypertension, and dyslipidemia.  R. 379.  He noted that Claimant experienced symptoms of back pain, fatigue, and occasional headaches.  *Id.*  In addition, the doctor noted that Claimant occasionally experienced pain, fatigue, and shortness of breath that would interfere with his attention and concentration.  R. 380.

In the residual functional capacity questionnaire, Dr. Mo estimated that Claimant could sit for less than two hours in an eight-hour workday, and  "stand/walk" for the same.  R. 381.  He also indicated that Claimant would need a job that permits shifting positions at will from sitting, standing, or walking, and that he would sometimes need to take unscheduled breaks during an eight-hour workday.  *Id.*  Dr. Mo opined that with prolonged sitting, Claimant's legs should be elevated.  *Id.*  He also  noted that Claimant could only occasionally look down, turn his head right or left, and hold his head in a static position.  R. 381.  Claimant was also limited to occasionally twisting, stooping, crouching, and climbing ladders and stairs.  R. 382.  Dr. Mo concluded by indicating that Claimant's impairments were reasonably consistent with the symptoms and functional limitations described in the

questionnaire.  *Id.*

### 5. Dr. Dominic Gaziano - Internal Medicine Consultative Exam

On April 2, 2001, Dr. Gaziano conducted an internal medicine consultative evaluation. R. 145- 48.  During the exam, Claimant's chief complaints were bilateral knee pain, sharp feet pain, diabetes, hypertension, back pain, and carpal tunnel.  R. 145-46.  He reported a history of diabetes, hypertension, and low back pain.  *Id.*  He reported a difficulty in tying shoelaces, occasional difficulty in using silverware, and occasional difficulty in buttoning. R. 146. Claimant asserted that he could walk four blocks and does not use a cane.  *Id.*

Claimant was moderately obese; he weighed 278 pounds at five feet ten and one-half inches tall.  R. 146.  His blood pressure was 150/90.  *Id.*  Dr. Gaziano noted a decreased range of motion of both knees, with no edema, tenderness, warmth, or redness in either knee. R. 147.  Claimant demonstrated normal grip strength and dexterity.  *Id.*  X-ray studies of Claimant's lumbosacral[10] spine and right knee tested negative for abnormalities.  R. 151.

The doctor's clinical impression indicated the following problems: (1) ten-year history of diabetes; (2) bilateral feet pain most likely secondary to diabetic neuropathy; (3) bilateral knee arthralgias most likely secondary to ostereoarthritis; (4) fifteen-year history of hypertension; (5) history of low back pain since 1987, possibly related to his previous work; and (6) bilateral carpel tunnel syndrome with no noted dexterity difficulties.  R. 147-48. Claimant was not currently taking any anti-tricyclic medications for diabetic neuropathy.  R.

---

[10]"Relating to the lumbar vertebrae and the sacrum."  Stedman's at 233400.

147.

### 6. Non-Examining State Agency Physician

On April 13, 2001, Dr. Reynaldo Gotanco, a State Agency physician, reviewed and summarized Claimant's medical records and assessed his functional capacity. R. 152-59. In his functional capacity assessment, Dr. Gotanco found Claimant capable of: occasionally lifting twenty pounds; frequently lifting ten pounds; standing and walking for six hours in an eight-hour work day; sitting for six hours in an eight-hour work day; and climbing and kneeling only occasionally due to bilateral knee arthralgias. R. 153-54. In his additional comments, Dr. Gotanco cited Dr. Gaziano's April 2001 consultative exam and noted that Claimant "was not having any dexterity difficulty" with either hand or any "lower extremity neurologic defects." R. 159.

### D. The ALJ's Decision- September 25, 2006

After conducting the hearing and reviewing the evidence, the ALJ issued a partially favorable decision, finding Claimant disabled and awarding benefits as of March 9, 2005, but not from January 21, 2001 through March 8, 2005. R. 230-42. The ALJ found that prior to March 9, 2005, Claimant's medically determinable impairments could reasonably have been expected to produce the alleged symptoms; however, Claimant's statements about the "intensity, persistence, and limiting effects" of those symptoms lacked sufficient credibility such that prior to the stated date, the Claimant had the RFC to perform a limited range of light level work. R. 239.

The ALJ assessed Claimant's application for SSI under the five-step sequential

analysis.  *See infra*, Part II.A. (describing the disability standard of review).  Under step one of the disability analysis, the ALJ noted that although claimant had worked two hours per day at the People's Music School in 2001 and 2002, the wages earned were insufficient for the work to qualify as substantial gainful activity.  R. 236.  Claimant had not engaged in substantial gainful activity at any time relevant to the decision.  *Id.*

At step two, the ALJ found that Claimant's combination of impairments was severe. R. 237.  At step three, however, the ALJ determined that Claimant's individual impairments and combination of impairments did not meet or equal a listed impairment under the Social Security Regulations.  *Id.*

At step four, the ALJ determined Claimant's RFC and found that Claimant has no past relevant work.  R. 237-40.  The ALJ concluded that prior to March 9, 2005, the claimant had the RFC to "lift/carry twenty pounds occasionally and ten pounds frequently; occasionally climb stairs/ramps, stoop, crouch, crawl, and kneel; perform activities that do not involve using ladders or scaffolding for work tasks; and, perform activities that do not require using the hands for frequent grasping and fine manipulation."  R. 237.  However, beginning on March 9, 2005, the claimant only had the RFC to stand or walk a total of two hours in an eight-hour workday.  R. 239.

The ALJ found that while Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, Claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms "are not entirely credible prior to March 9, 2005."  *Id.*  The ALJ found that beginning on March 9, 2005, Claimant's

"allegations regarding his symptoms and limitations are generally credible." R. 240.

The ALJ noted that the illegibility of the medical records makes it difficult to determine when actual limitations became more severe. *Id.* Further, the ALJ found that Claimant lacked any significant work history and was not particularly credible since he is a "malingerer when it comes to work." *Id.* The ALJ stated that the RFC finding for the period prior to March 9, 2005 gives Claimant "significant benefit of the doubt as to hand problems, for which the medical evidence, other than his prior carpal tunnel release surgery, is minimal." R. 239. The ALJ further noted that the course of treatment pursued by Claimant's treating sources did not seem to reflect upon the course of treatment for an individual with a disability. *Id.* The ALJ also found that the physical exams in the record provided at best moderate support of a disability, and he would expect to see more significant physical abnormalities in the exams if Claimant were truly disabled. *Id.* Lastly, the ALJ used the finding of the State Agency physician to support his conclusion that Claimant was "not disabled" prior to the March 9, 2005. *Id.*

Under step five, the ALJ concluded that Claimant was not disabled prior to March 9, 2005, because based on Claimant's RFC and the VE's testimony, Claimant could perform approximately 7,500 counter clerk, 22,000 light delivery, and 30,000 gate guard jobs. R. 241. Beginning March 9, 2005, however, the ALJ concluded that Claimant was disabled based on a RFC for the full range of sedentary work, considering Claimant's age, education, and work experience. *Id.*

## II. LEGAL STANDARDS

**A.      Standard of Review**

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42. U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). A mere scintilla of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

While a reviewing court must conduct a "critical review" of the evidence before affirming the Commissioner's decision, *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000),

it may not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Social Security Administration. *Scott*, 297 F.3d at 593. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Rice v. Barnhart*, 384 F.3d 363, 368-69 (7th Cir. 2004). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## B.    Disability Standard

Disability insurance benefits ("DIB") are available to a claimant who can establish "disability" under the terms of Title II of the Social Security Act. *Rice*, 384 F.3d at 365. An individual is "disabled" if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A disabled individual is eligible for DIB, however, only if she is under a disability. 42 U.S.C. § 423(a)(1)(D). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

To make this determination, one must employ a five step sequential analysis. 20 C.F.R. §§ 404.1520(a)-(f). Under this process, the ALJ must inquire, in the following order:

(1) whether the claimant is engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. *White v. Barnhart*, 415 F.3d 654, 657 (7th Cir. 2005). Once the claimant has proven he can not continue his past relevant work because of physical limitations, the ALJ carries the burden to show that other jobs which the claimant can perform exist in the economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

## III. DISCUSSION

Claimant raises three issues for judicial review: (1) whether the ALJ failed to properly determine the onset of Claimant's disability; (2) whether the ALJ failed to perform an adequate RFC; and (3) whether the ALJ failed to properly follow the law of the case.

### A.    The ALJ Failed to Properly Determine the Onset of Claimant's Disability.

In this case, the ALJ determined that Claimant is disabled and entitled to DIB as of March 9, 2005. The issue, therefore, is whether the ALJ properly selected March 9, 2005 as opposed to any other date, as the proper onset date.

The onset date is critical, and "it is essential that the onset date be correctly established and supported by the evidence." S.S.R. 83-20. Factors relevant to the determination of the onset date include the claimant's allegations, the claimant's work history, and the medical evidence. *Id.* To be significant, the claimant's allegations and the date of work stoppage must be consistent with the severity of the condition shown by the

medical evidence.  *Id.*  The ALJ must give convincing rationale for the onset date selected.  *Id.*  That date should be set on the date when it is most reasonable to conclude that the impairment was severe enough to cause the inability to engage in substantial gainful activity for at least twelve months.  *Id.*

SSR 83-20 describes the "policy and . . . relevant evidence to be considered when establishing the onset date of disability." SSR 83-20.  For disabilities of traumatic origin, the onset date is the day of the injury if death or the inability to engage in substantial gainful activity for at least twelve months is expected.  *Id.*  For disabilities of non-traumatic origin, the onset date must be determined by considering the claimant's allegations, the claimant's work history, and the medical and other evidence concerning the severity of the impairment.  *Id.*

SSR 83-20 states that Claimant's alleged onset date is the starting point for determining an onset date.  *Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991).  That date "should be used if it is consistent with all the evidence available." S.S.R. 83-20.  That date is adjusted by considering the claimant's work history, and then adjusted further in light of medical evidence describing examinations or treatment of the claimant.  *Id.*  Medical evidence is "the primary element in the onset determination." *Id.*  However, the claim does not fail for lack of medical evidence establishing the precise date the impairment became disabling. In such cases, the ALJ should seek a medical expert for assistance.  *Id.*

The ALJ failed to follow the analysis of SSR 83-20.  The ALJ does not mention, nor does he employ an analysis similar to that set forth in SSR 83-20.  In choosing the onset date,

the critical date is the actual onset of the impairment, not the date of diagnosis. *See Lichter v. Bowen*, 814 F.2d 430, 435 (7th Cir. 1987). If the date of diagnosis is not dispositive in determining the onset date, it follows that less reliance should be placed on the date when Claimant sought continued treatment from a new facility. Thus, in this case, the ALJ erroneously relied on the date that Claimant "sought additional treatment through Heartland Health Outreach" as Claimant's onset date. R. 240. The Heartland medical record did not reveal anything that prior medical records dating back to 2001 did not already show. R. 373-78, 138-49, 324-69. The record was consistent with Claimant's earlier diagnosis of diabetes mellitus, hypertension, neuropathy and back pain. R. 117-18, 120, 139-42, 145-48, 375, 377.

Even the ALJ acceded that Claimant's symptoms could have preexisted the chosen onset date. R. 239. He stated that before March 9, 2005, "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms." *Id.* He also found Claimant disabled as of March 9, 2005 because "[his] hypertension continues to remain elevated . . . and he continues to receive conservative treatment for his other ongoing medical problems." *Id.* The ALJ cannot both state that Claimant's disability started on March 9, 2005, while at the same time assert that Claimant was disabled from March 9, 2005 because he continued to manifest the symptoms of his disability prior to that date. *Id.*

Furthermore, the lack of medical records that support an earlier date should not excuse the ALJ from applying the SSR 83-20 analysis. The ALJ partially justifies the chosen onset date by stating the lack of concrete medical evidence to support a specific onset date: "Due to the illegibility of the medical records . . . it is difficult to determine when actual limitations

became more severe." R. 240. Similarly, the Commissioner argues that Claimant's treating physician did not opine that Claimant's limitations "related back to an earlier period." Comm'r Brief at 7. However, the lack of substantial evidence to pinpoint a specific date should not justify a selection of an arbitrary onset date. SSR 83-20 provides guidance to the ALJ in such a situation.

Pursuant to SSR 83-20, the starting point in this case is January, 2001, Claimant's alleged onset date. S.S.R. 83-20. If the onset date alleged by Claimant was consistent with the medical and other evidence, SSR 83-20 would have required the ALJ to adopt that date. *Id.* No adjustments due to work history is required because Claimant did not engage in any substantial gainful activity subsequent to that date. *Id.* ; R. 390-91, 235. Furthermore, the medical records support Claimant's alleged onset date of January 2001. R. 117-18, 120, 139-42, 145-48, 375, 377. While many medical records were illegible from 2001 through 2004, the records do indicate that Claimant consistently sought medical help. R. 117-20, 138-49, 324-69. Furthermore, some legible medical records, dated before March 9, 2005, reveal that the same diagnoses in the Heartland Health record existed prior to the March 9, 2005 date. *Id.* For example, legible records indicate that Claimant was diagnosed with bilateral carpal tunnel syndrome, diabetic neuropathy, peripheral neuropathy, diabetes, hypertension, plantar fascitis, edema, obesity, hand pain and numbness. R. 117-18, 120, 139-42, 145-48, 375, 377. The nature of Claimant's testimony[11] and medical evidence tend to support the alleged onset

---

[11]Claimant's 2006 testimony before the ALJ was consistent with his 2002 testimony. He testified that he had problems with his hands, that he experienced numbness in his hands, that he could not hold things for long, that he experienced back pain, and that he had problems with his feet. R. 269-74, 395, 399-400, 403-04, 406-07.

date.

Finally, because of the difficulty in assessing the medical records, the ALJ should have called a medical expert to determine the onset of Claimant's disability. S.S.R. 83-20. This Court has stated, "[a]lthough the onset date alleged by the claimant should be used if it is consistent with all the evidence available, there are instances in which inferences must be made as to whether the onset date precedes the first recorded medical examination. Inferences must have a legitimate medical basis, and the ALJ should seek the assistance of a medical advisor." *Rohan v. Barnhart*, 306 F. Supp.2d 756, 767 (N.D. Ill. 2004). The ALJ recognized that it was difficult to ascertain when the limitations became more severe. R. 240. When faced with such an ambiguous situation, the ALJ erred by failing to seek the advice of a medical expert.

In this case, the ALJ failed to give a convincing rationale for the date selected and has not selected the most reasonable date. The Court finds that the ALJ failed to properly determine the onset date of Claimant's disability. The Court finds that the ALJ should have applied SSR 83-20 in determining Claimant's onset date. The Court therefore vacates and remands the ALJ's judgment to allow the ALJ to apply SSR 83-20 to determine the onset date of Claimant's disability.

**B.     The ALJ Failed to Perform an Adequate RFC.**

An ALJ must consider all relevant evidence and may not select and "discuss only that evidence that favors his ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In addition to relying on substantial evidence, an ALJ must minimally articulate his analysis at some level. *Young v. Sec'y of Health and Human Servs*., 957 F.2d 386, 393 (7th Cir. 1992). He must build "an accurate and logical bridge" from the evidence to his conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). The Court finds that the ALJ failed to conduct an adequate RFC of Claimant's limitations prior to March 9, 2005 when he failed to minimally articulate his analysis to build "an accurate and logical bridge" from the evidence to his conclusion. However, the Court does not find that 1) SSR 96-8p mandates an extensive function-by-function articulation requirement, nor that 2) the ALJ improperly relied on State Agency physicians.

### 1.     The ALJ Failed to Minimally Articulate Logical Grounds.

The Court agrees with Claimant that the ALJ did not minimally articulate his RFC assessment as required by SSR 96-8p for the period prior to March 9, 2005. In particular, the RFC analysis failed to provide a discussion of how all the medical evidence warranted an

onset date of March 9, 2005. *See supra,* Part III.A. The ALJ concludes with "[a]fter considering the evidence of [the] record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely credible prior to March 9, 2005." R. 239. In so concluding, the ALJ admits that the medical evidence presented could produce the alleged symptoms. *Id.* In light of this, the ALJ cannot simply dismiss the medical evidence which supports Claimant's allegations based upon his own assessment of Claimant's credibility. R. 237-39.

Given such inconsistencies, the ALJ should have substantiated his RFC assessment with at least a minimum level of articulation. Although the ALJ engaged in some weighing, he gave some credence to the State Agency Physician, he failed to meet the minimum articulation requirement. R. 239. In particular, the record is void of an explanation as to why the medical evidence presenting similar diagnosis and symptoms both before and after the date of Claimant's visit to Heartland Health Outreach necessarily pointed to that date as the proper onset date of his disabilities. R. 117-18, 120, 139-42, 145-48, 373-82. The Court therefore vacates and remands the ALJ's judgment to allow the ALJ to retain a medical expert and to articulate his rationale in determining the onset date of Claimant's disability.

**2. SSR 96-8P Does Not Mandate a Function-by-Function Articulation Requirement.**

Claimant next argues that the ALJ's failure to consider sitting and standing separately created a reversible error. SSR 96-8p states in pertinent part:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . Only after that may [the] RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

S.S.R. 96-8p.

SSR 96-8p further provides that in determining Claimant's exertional capacity, the seven strength demands[12] "must be considered separately (e.g., "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours"), even if the final RFC assessment will combine activities (e.g., "walk/stand, lift/carry, push/pull")." *Id.* Claimant argues that the RFC assessment must also include a narrative discussion describing how the evidence supports each functional consideration.

SSR 96-8p does not mandate a function-by-function articulation requirement. The plain language of SSR 96-8p requires the adjudicator to "consider, not articulate," Claimant's RFC in a function-by-function basis. *Corder v. Barnhart*, 2004 WL 1381125, *6 (N.D. Ill. 2004) (finding that SSR 96-8p does not require the Commissioner to articulate in detail the claimant's ability to sit, stand, or walk for long periods of time). The "Narrative Discussion Requirements" in SSR 96-8p requires the ALJ to discuss an "individual's ability to perform

---

[12] Exertional capacity addresses the seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. S.S.R. 96-8p.

sustained work activities in an ordinary work setting on a regular basis," and "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.*; S.S.R. 96-8p. This requirement does not require a detailed function-by-function analysis that Claimant urges. Only if the ALJ found that Claimant's ability to sit, stand, or walk was compromised would the burden of discussion fall on the ALJ. *Corder,* 2004 WL 1381125, *6.

Morever, the ALJ sufficiently considered Claimant's postural and manual limitations resulting from his impairments. R. 238-39. The ALJ analyzed Claimant's testimony in conjunction with medical evidence which revealed findings consistent with Claimant's difficulty to sit and stand. R. 238. The ALJ stated, "[h]e is unable to walk or stand for prolonged periods of time." *Id.* The ALJ further stated, "[d]uring a consultative internal medicine examination . . . in April 2001 . . . [Claimant] asserted that he could walk four blocks and does not use a cane." *Id.* The ALJ considered all of these functional limitations and the extent to which they were consistent with objective medical evidence in forming the RFC. The ALJ further included these exertional restrictions in his hypothetical to the VE. R. 411-12, 415. For all these reasons, the Court finds that the ALJ sufficiently considered Plaintiff's postural and manual restrictions due to his impairments.

**3.      The ALJ is Allowed to Rely on the State Agency Physician's Assessment.**

Claimant next argues that the ALJ erred to the extent that the ALJ relied on the State Agency physician's opinion. The State Agency physician relied, in part, on Dr. Gaziano's "inconsistent" consultative examination. R. 159; *see infra*, Part III.C. The State Agency physician adopted Dr. Gaziano's findings that Claimant exhibited "normal grip strength and dexterity", and "no lower extremity neurological deficits." *Id.*  However, the Appeals Council remand order had first sought additional evidence and clarification of these same findings by Dr. Gaziano. R. 288-89. Claimant argues that the ALJ's reliance on this inconsistent opinion creates a reversible error by the Court. The Court disagrees.

Claimant relies upon *Hodes v. Apfel*, 61 F.Supp.2d 798 (N.D. Ill. 1999).  In *Hodes*, the court found that the ALJ should not have relied on a doctor's statement which was based on a factual error.  *Id.* at 807-08. The court found the ALJ's exertional limitations findings, which were solely based on the doctor's erroneous conclusions, lacked the support of substantial evidence.  *Id.*  However, the standard applied against the ALJ in such a situation is extremely high - "no reasonable mind [would] accept them as adequate to support a conclusion." *Id.* at 808 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  In *Hodes,* the doctor's analysis was based on a clearly erroneous fact that the claimant walked into a second doctor's office without a cane.  *Id.* at 807-08.  The doctor's finding was unreasonable in light of the fact that the second doctor confirmed that the claimant in fact used a cane in his office.  *Id.*

In this case, the ALJ reasonably relied on the opinion of the State Agency physician.

Dr. Gaziano's opinion may have been inconsistent, but it was not so unreasonable that "no reasonable mind [would] accept [it] as adequate to support a conclusion." *Id.* at 808 (quoting *Richardson*, 402 U.S. at 401). Dr. Gaziano formed his opinion by conducting various physical examinations, and by evaluating Claimant's medical history. R. 145-46. Reasonable persons may accept a physician's assessment that a patient experiencing "bilateral feet pain *most likely* secondary to diabetic neuropathy" may nevertheless have normal neurological functions. R. 145-46 (emphasis added). Reasonable persons may also reject the possibility that someone experiencing bilateral feet pain most likely secondary to diabetic neuropathy could nevertheless be found to have normal neurological functions. *Id.* Reasonable minds could also differ in assessing whether Dr. Gaziano's opinion provided adequate support in reaching a sound conclusion.

Moreover, the State Agency opinion was only partially based on Dr. Gaziano's opinion. R. 152-59. The State Agency physician also relied on a variety of different objective medical evidence including but not limited to the x-ray interpretation of the lumbosacral spine & right knee, and the result of a cardiac exam. R. 159. The State Agency physician's assessments required at least some judgment that is independent of Dr. Gaziano's opinions. These opinions deserve some weight, and the ALJ did not err by relying on them. R. 239.

The Court finds that the ALJ failed to conduct an adequate RFC solely because he failed to minimally articulate logical grounds. However, the Court does not find that 1) SSR 96-8p mandates an extensive function-by-function articulation requirement, or that 2) the ALJ improperly relied on the opinions of the State Agency physicians.

## C.     The ALJ Failed to Comply with the District Court and Appeals Council Remand Orders.

Claimant argues that the ALJ failed to further develop the record and re-evaluate Claimant's peripheral neuropathy and bilateral carpal tunnel syndrome as ordered by Magistrate Judge Schenkier and the Appeals Council.

The Appeals Council vacated and remanded the ALJ's decision partly because the ALJ relied on the inconsistent findings of Dr. Dominic Gaziano, a one time treating source. R. 288-89. The remand order required the ALJ to further evaluate Claimant's peripheral neuropathy and diabetic neuropathy, as well as to attain clarification of the internal inconsistencies within Dr. Gaziano's neurological findings. R. 289. In addition, the ALJ was also required to further evaluate Claimant's carpal tunnel syndrome. *Id.*

The ALJ failed to re-evaluate Claimant's peripheral neuropathy and bilateral carpal tunnel syndrome both singularly and in combination with Plaintiff's other impairments. R. 238-39. In his opinion, the ALJ merely repeats the initial April 2001 findings by Dr. Dominic Gaziano. R. 238. The ALJ states in relevant part:

> *no noted lower extremity neurological deficits* . . . with no edema . . . Dr. Gaziano noted that claimant demonstrated *normal grip strength and dexterity;* and, there was *no evidence* of lumbar nerve root compression or *peripheral neuropathy* . . . his bilateral foot pain was most likely secondary to *diabetic neuropathy*.

R. 239 (emphasis added).

Nowhere in his opinion does the ALJ seek to obtain additional evidence, or clarify the inconsistencies that partially led to the original remand order. R. 234-42. The Court is no more or less informed about Claimant's peripheral neuropathy or bilateral carpal tunnel syndrome after the second administrative hearing. The ALJ's statement that he "gave plaintiff a significant benefit of the doubt as to his hand problems for which medical evidence, other than the carpal tunnel release surgery was minimal" was a conclusion rather than an analysis as was required by the law of the case. R. 239. The Court finds that the ALJ erred by not complying with the remand orders.

## IV. CONCLUSION

For the reasons set forth in this opinion, **Claimant's motion for summary judgment is granted and Defendant's motion for summary judgment is denied. This case is remanded in order for the ALJ: 1) to retain a medical expert and to determine the onset date of Claimant's disability, 2) to articulate his RFC determination, and 3) to comply with the remand orders previously issued by Magistrate Judge Schenkier and the Appeals Council consistent with this Court's opinion.**

**SO ORDERED THIS 11th DAY OF OCTOBER, 2007.**

_Morton Denlow_
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Barry A. Schultz
Kristen A. Kobayashi
The Law Offices of Barry A. Schultz, P.C.
1609 Sherman Avenue, Suite 205
Evanston, Illinois 60201

Counsel for Claimant

Samuel D. Brooks
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604

Counsel for Commissioner

Catherine A. Seagle
Assistant Regional Counsel
Social Security Administration
Office of the General Counsel, Region V
200 West Adams Street, 30th Floor
Chicago, Illinois 60606

Counsel for Commissioner